No. 31,652

In re RAYMOND McGRATH. J. B. McGRATH, as Father, *Appellant*, v. GUY VAIL et al., *Appellees*.

(37 P. 2d 3)

Opinion filed November 3, 1934.

*A. E. Crane, A. Harry Crane* and *Ward D. Martin*, all of Topeka, for the appellant.

*Owen S. Samuel*, of Emporia, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a juvenile court proceeding. Guy Vail, a resident of Lyon county, filed a petition in the juvenile court of

that county alleging that Raymond McGrath, a child five years of age, was: (1) "Destitute, homeless, abandoned, dependent upon the public for support; has not proper parental care. (2) That the father of said minor is not fit or proper person to have the care, custody and control of said child, has failed to provide said minor child with a home and has no suitable home for said child, and is unable to furnish said child with suitable parental care and training." J. B. McGrath, the child's father, appeared in opposition to the petition. After a hearing the juvenile court found Raymond McGrath to be a dependent and neglected child, and remanded him to the custody of the juvenile officer, to be dealt with according to law. J. B. McGrath appealed to the district court, where a trial was had *de novo*. The court found "that Raymond McGrath is and was a dependent and neglected child," and ordered the probation officer to retain custody of the child, "and it is proper for her to leave the said child with Nina Vail, wife of Guy Vail, complainant." From this finding and judgment J. B. McGrath has appealed.

The principal question argued on the appeal is whether there is evidence to sustain the court's findings that Raymond McGrath was a dependent and neglected child, as those terms are used and defined in our juvenile court law (R. S. 38-401 to 38-429). The statute (R. S. 38-402) defines those terms as follows:

". . . For the purpose of this act, the words 'dependent child' and 'neglected child' shall mean any child who for any reason is destitute or homeless or abandoned, or dependent upon the public for support, or has not proper parental care or guardianship, and has idle and immoral habits, or who habitually begs or receives alms, or who is found living in any house of ill-fame or with any vicious or disreputable persons; or whose home, by reason of neglect, cruelty or depravity on the part of its parents, guardian or other person in whose care it may be, is an unfit place for such child; or any child under the age of ten years who is found begging, peddling or selling any article, or singing or playing any musical instrument upon the street, or who accompanies or is used in aid of any person so doing."

The pertinent evidence may be summarized as follows: J. B. McGrath and his wife were married October 18, 1911, at Las Vegas, N. Mex., where he then was stationed as an employee of the Atchison, Topeka & Santa Fe Railway Company in its auditing department. Not long thereafter he was transferred to San Marcial for three years, when he was transferred to Topeka for a few months and then to Emporia, where they lived for three years. By this time two children, J. B. and Richard, had been born to them. Mrs.

McGrath has three sisters, mentioned in the testimony—Nina Vail, wife of Guy Vail, of Emporia; Mrs. Snyder, of Topeka, and Mrs. Dickensheets, of Iola. In 1917 Mr. McGrath was transferred to Amarillo, Tex., and he and his family went there to live for about three years. When they went to Amarillo Mrs. McGrath's health was good, but while there she had a serious case of the flu, followed by yellow jaundice. When she recovered from that she developed an inability to walk in a straight line. Several doctors treated her and a nurse was employed for a time, then Mrs. Dickensheets and Mr. McGrath's mother went there to care for her. Later, Mrs. McGrath came to Topeka for treatment, and Mr. McGrath succeeded in a few months in being transferred to Topeka. The family lived at Carbondale, about ten miles from Topeka, for three years. During this time Mrs. McGrath's inability to walk in a straight line continued. She was treated by several physicians, one of whom kept her in the hospital for five months for observation. It was then thought that a transfer to a different climate would help, and Mr. McGrath got transferred to Pueblo. His family went with him. They lived in an apartment for a time and then purchased a home on installments. Mrs. Vail invited Mrs. McGrath to visit her. She went there, as Mr. McGrath supposed, for a few days only. She stayed nine months. After some correspondence Mr. McGrath paid the Vails $75 a month while his wife and children were there. After being at Pueblo about two years Mr. McGrath was transferred again to Topeka, where he and Mrs. McGrath and the oldest boy, J. B., lived in an apartment hotel, but took their meals out most of the time, for about two years. During this time it appears the second son, Richard, was staying with the Vails at Emporia. A third son, Mickey, born perhaps while they were at Carbondale, Mrs. Dickensheets offered to take to her home, and did so. He has stayed there since that time, Mr. McGrath furnishing his clothes and paying for his keep other than room and board. Mr. McGrath then purchased a home in Topeka on payments and furnished it. In the few years previous to that there had not been much change in Mrs. McGrath's condition. She was being treated all the time by one or more doctors. Mr. McGrath furnished help for her much of the time. There is no complaint that he did not furnish her medical attention and such help as she needed. It was difficult to keep help, for she was not well and would be dissatisfied and discharge the employees, or they would quit. In 1927 the

doctors advised Mr. McGrath that Mrs. McGrath's trouble was a tumor on the brain. In July of that year his company sent him on business to points in Texas and California, which took him away for about two weeks. He had a bank account his wife was at liberty to draw on, but in addition to that he left her money and three checks signed in blank. There had been no trouble between Mr. and Mrs. McGrath. She made no complaint about his going on this trip. When he returned home he found the house closed and postcards he had written his wife while away were in the mail box on the porch. Upon inquiry he learned that his wife had gone to the Vails at Emporia. He called by telephone and was told by Mrs. Vail, as he testified, that he could not talk to his wife, that she did not want to talk to him, and that he could not come there to see her. Their son Richard was with her. The oldest boy, J. B., had stayed at Topeka. In a few days Mr. McGrath received a letter from Mr. Vail asking the remittance of $22.65 for certain items of expense he had been to on account of Mrs. McGrath and Richard. In the correspondence which followed Mr. McGrath sent the money, but also sought an interview or explanation from his wife, which he did not obtain. Soon thereafter Mrs. McGrath filed an action in the district court at Topeka against Mr. McGrath for alimony, charging him with extreme cruelty and gross neglect of duty, in that she was ill and that he had not provided her proper care and sufficient help, and setting out that she was again to become a mother. She alleged her sister had come and taken her to the sister's home while Mr. McGrath was away, and asked the court to restrain him from coming about her. In that action he filed an answer denying the charges of extreme cruelty and gross neglect. On October 1, 1927, the court heard plaintiff's motion for temporary support and ordered Mr. McGrath to pay to his wife $100 per month pending the further order of the court. The case was never brought to trial. The child, Raymond McGrath, was born February 14, 1928. Mr. McGrath made the payments of $100 a month, as ordered by the court, until the death of Mrs. McGrath on November 2, 1932. Neither party sought to have the amount of those payments modified, although the Vails now testify that the sum was inadequate to care for Mrs. McGrath and the two children, Richard and Raymond; and in a few months after the order was made Mr. McGrath's salary was reduced to $250 per month, and has fluctuated around that figure since. Mr. McGrath did not go to the Vail

home to see his wife or children. He testified he had been told not to do so and knew there would be trouble if he went. Mrs. Vail testified: "Mr. McGrath was not welcome at our house, but he was not told to stay away."

Within a few days after his wife's death Mr. McGrath wrote to Mr. Vail asking for the custody of his sons, Richard and Raymond. Within a short time Mr. Vail, the attorney who represented Mrs. McGrath in the separate maintenance action, and an attorney representing Mr. McGrath, had a conference with respect to turning over these children to Mr. McGrath. Mr. Vail said there was a balance of $80 due on the alimony and other items, amounting to $22, which he thought Mr. McGrath should pay, also that he should assume the payment of the expenses of his wife's funeral, $425. Mr. McGrath paid these first two items and arranged with the undertaker to pay funeral expenses in monthly payments. It appears the understanding at that time was that the children would be delivered to Mr. McGrath the next Sunday. Since his wife had been at Emporia Mr. McGrath and the oldest boy had been making their home with his mother at Carbondale. On the Saturday following this conference Richard came to his father's home at Carbondale and advised that he thought the Vails would not let his father get Raymond on the next day, as planned. Mr. McGrath also received word indirectly from the Vails that they planned to be away for a few days and would not be at home on Sunday. The following Wednesday this proceeding was instituted in the juvenile court. Mr. McGrath's mother is sixty-five years of age, in good health, and is anxious that her son have his children with him in her home. No complaint is made of the manner in which Mr. McGrath has reared the oldest son, who had been with him all the time. He finished high school, attended business college, and we are advised now has employment. Mr. McGrath is financially able to provide for the child Raymond. Mr. McGrath is situated so he can provide a good home for him, and wants to have him. Raymond is a well-behaved boy, truthful and honorable; has no bad habits; does not associate with vicious or disreputable boys, nor peddle on the street. At the time of the hearing in district court he was being sent to school, but had not gone to Sunday school. He had lived with his mother until her death, with the Vails, and continued to live there—the place where the court found it was proper to leave the child. The child's father, amply able to

provide a good home for the child, is anxious to do so. This is not the kind of a child which our statute (R. S. 38-402) defines as a dependent and neglected child. (*Hollis v. Brownell,* 129 Kan. 818, 284 Pac. 388.)

In support of the finding and order of the trial court it is argued that J. B. McGrath never supported the child Raymond; that the $100 which he paid was for the support of Mrs. McGrath only, and by reason of her illness was inadequate for that purpose; that Mr. and Mrs. Vail furnished the child a home, parental care and support, without any assistance from the child's father; that they are a part of the public and hence that the child is and all his life has been dependent on the public for support. The argument may be characterized as being more ingenious than sound. Under the evidence there is room for debate whether the $100 per month was sufficient to maintain Mrs. McGrath and her two children at the Vail home, or whether all of it was consumed in caring for Mrs. McGrath. We shall not indulge in this debate nor detail the evidence relating to it, for, perhaps, the general finding of the court resolved it in favor of the view that it was insufficient to provide maintenance for Raymond. But, if so, there is no intimation that this fact was ever brought home to Mr. McGrath. Neither Mrs. McGrath on her own account, nor the Vails for her, ever asked to have the amount of the payments increased, nor did they complain that the sum was inadequate for the maintenance of Mrs. McGrath and her children, then with her. When Mr. Vail filed the petition in this case he knew that Mr. McGrath, who was amply able to provide Raymond a home and maintain him, had asked the custody of Raymond in writing, and that he, Mr. Vail, had agreed the child would be delivered to Mr. McGrath by a certain day, and that word was sent the Vails would not be home for a few days; and within that few days he filed the petition in juvenile court. When the father of the child was able and anxious to take him, care for him and support him, there was no justification in a finding that the child lacked parental care and was dependent on the public for support. Perhaps the real reason for this proceeding is that the Vails had become attached to the child and wanted to keep him. Mrs. Vail testified: "I have the child and I want to keep him. We brought this action because we want to hold him and we want to protect him. My husband thinks the child is homeless."

The rule is well settled that the father of a minor child (the mother

being deceased) is entitled to the custody of the child, unless he has in some legal way surrendered his right thereto or been found or adjudged to be an improper person to have such custody. (*Melroy v. Keiser*, 123 Kan. 513, 225 Pac. 978. Many other cases are to the same effect.) The petition in this case charged that J. B. McGrath, the father of the child, is not a fit or proper person to have the care, custody and control of the child. Some evidence was introduced on that branch of the case. As a result of this the court declined to find, or at any rate did not find, that Mr. McGrath was not a fit person to have the custody of the child. Indeed, such a finding could not well have been supported by the evidence. The result is, the fact that the Vails had become attached to the child and desired to keep him does not justify the finding and order of the trial court.

The judgment of the court below is reversed, with directions that the child, Raymond McGrath, be discharged from the jurisdiction of the juvenile court, and that the custody of the child be given to the father, J. B. McGrath.